IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
|    Gladys E. Hurlbutt | : | |
|         Debtor | : | Case No. 1:20-bk-2553-HWV |
| | : | |
| Theodore F. Reynolds Jr. | : | |
|         Movant | : | Motion to Dismiss Case with Prejudice (#46); |
|    v. | : | Objection to Confirmation of Plan (#25) |
| Gladys E. Hurlbutt | : | |
|         Respondent | : | |

## OPINION[1]

Before the Court is Theodore F. Reynolds, Jr. ("Reynolds")'s Motion for an Order Dismissing Gladys E. Hurlbutt ("Debtor")'s Chapter 13 Case with Prejudice (the "Motion" or "MTD") (ECF No. 46) and the Debtor's Response thereto ("Response") (ECF No. 51). Also before the Court is Reynolds' Objection to Confirmation of the Debtor's Amended Plan (the "Objection") (ECF No. 25) as well as the record and exhibits from the hearing conducted on June 9, 2021 (the "Hearing"). For the reasons set forth below, the Motion will be denied, and the Objection will be overruled as to the assertion of bad faith.

### I.   Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and 157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

---

[1] Drafted with the assistance of Casey Q. Daggett, Esq., Law Clerk

1

## II. Facts and Procedural History

According to the record, Reynolds and the Debtor dated and at times cohabitated from 2001 until August of 2017 when the Debtor ended what she describes as a "tumultuous relationship." MTD Hr'g. Tr. 5:24-25; 34:12-13; 64:1-2, ECF No. 57. Shortly thereafter, Reynolds filed a Complaint against the Debtor in the Snyder County Court of Common Pleas (the "State Court"), seeking a judgment against the Debtor on theories of unjust enrichment/conversion, conversion of personal property, conversion, forgery and endorser liability, replevin, constructive trust/real estate, and constructive trust/monies of the plaintiff (the "Complaint"). MTD Ex. B. Believing the allegations in the Complaint to be without merit, the Debtor hired counsel ("State Counsel") to defend against same. MTD Hr'g. Tr. 58:6; 90:14-22. Notwithstanding her intent to defend, and through what appears to be no fault of her own, the State Counsel failed to timely answer or otherwise respond to the Complaint. MTD Hr'g. Tr. 30:7-9; 32:2-4; 34:21-24. Because of this failure, a judgement by default was entered against the Debtor on July 2, 2018 assessing damages in the amount of $199,475.05 plus interest pursuant to same (the "Default Judgment"). MTD Ex. B. Following entry of the Default Judgment, Reynolds sought and obtained a Writ of Execution directing the sheriff to levy against the Debtor's property. *Id.*

The Debtor and her State Counsel responded to these events by filing a Praecipe to Strike the Default Judgment (the "Praecipe to Strike") and a Petition to Stay Execution of the Default Judgment (the "Praecipe to Stay"). *Id.* The State Court promptly granted the Praecipe to Stay pending resolution of the Praecipe to Strike and issued a Rule to Show Cause upon Reynolds to show cause why the Praecipe to Strike should not also be granted. *Id.* Reynolds timely responded to the Rule to Show Cause and a hearing was scheduled. *Id.* Following that hearing, the State

2

Court entered an order dismissing the Praecipe to Strike (the "Order Dismissing Praecipe to Strike").[2] *Id.* Reynolds then served upon Debtor the Writ of Execution and a Notice of Sherriff's Sale of the Debtor's real estate located at 501 Cara Street, Beavertown, Pennsylvania (the "Debtor's Residence"). *Id.* Shortly thereafter, the Debtor appealed the State Court's Order Dismissing the Praecipe to Strike (the "Appeal"). *Id*. She also filed a voluntary chapter 13 bankruptcy petition with this Court on January 4, 2019 to case no. 1-19-00032-HWV (the "2019 Bankruptcy" or "2019 BK") to stay Reynolds' collection activities.[3] MTD Hr'g. Tr. 63:20-23. While the 2019 Bankruptcy was ongoing, the Pennsylvania Superior Court decided the Appeal against the Debtor and affirmed the State Court Order Dismissing the Praecipe to Strike. MTD Ex. B, ECF No. 46-2.

A short time later, the Debtor filed an amendment to her bankruptcy schedules in the 2019 Bankruptcy to disclose the existence of a legal malpractice claim against her State Counsel based upon its failure to timely respond to the Complaint (the "Malpractice Claim"). 2019 BK, ECF 34. Following that amendment, the Debtor filed a complaint against her former State Counsel in the State Court based upon her Malpractice Claim (the "Malpractice Action"). MTD Hr'g. Tr. 6:19-22. Subsequently, the Debtor and Reynolds engaged in negotiations to satisfy the Default Judgement with proceeds the Debtor anticipated receiving from the Malpractice Action. MTD Hr'g. Tr. 79:2-8. The record demonstrates that Reynolds agreed to forebear from initiating execution proceedings against the Debtor's Residence if the Debtor voluntarily dismissed her 2019 Bankruptcy to pursue resolution of the Malpractice Action and settlement with Reynolds. MTD Hr'g. Tr. 56:20-57:8, 79:2-81:8, 94:16-95:5; *See also* Debtor's Exhibit No. 1, ECF No. 46-

---

[2] The State Court apparently determined that the Debtor and her State Court Counsel had failed to file the Praecipe to Strike in a timely manner as required by with Pa.R.Civ.P. 237.1 and the pleading was thus dismissed.
[3] A review of the 2019 Bankruptcy docket discloses that the Debtor filed all documents required by § 521 of the Code as well as a chapter 13 plan as required by § 1321. 2019 Bankruptcy, ECF Nos. 17 and 18.

3

1. In reliance upon these assurances from Reynolds, and after consultation with her then bankruptcy counsel, the Debtor voluntarily dismissed her 2019 Bankruptcy on January 2, 2020. MTD Hr'g. Tr. 58:15-16; 2019 Bankruptcy, ECF 37.

Within weeks of dismissing her 2019 Bankruptcy, the Debtor settled the Malpractice Action for $75,000. MTD Hr'g. Tr. 6:23. After attorney fees, taxes, and expenses were paid, the net settlement proceeds available to her for settlement negotiations with Reynolds totaled $45,390 (the "Net Settlement Proceeds"). MTD Hr'g. Tr. 80:13-15; MTD ¶ 24. To prevent dissipation of the funds while settlement negotiations with Reynolds were pursued, Debtor's State Counsel held the Net Settlement Proceeds in escrow while the parties negotiated. MTD Hr'g. Tr. 56:13-57:8. Settlement discussions did ensue, but the record reflects that Reynolds refused to accept the Net Settlement Proceeds as full satisfaction of the Default Judgment. MTD Hr'g. Tr. 29:3-8; 58:15-16; 81:5-8. Unable to negotiate a settlement with Reynolds, the Net Settlement Proceeds were released to the Debtor on February 3, 2020, who quickly spent them on home repair, a vehicle for her son, decorations, furniture, tools, and various living expenses.[4] MTD Hr'g. Tr. 81:5-8. Some of these expenses were not her own but were solely attributable to her adult son. *Id.*

Beginning in July 2020, Reynolds reinitiated execution proceedings against certain personal property and the Debtor's Residence in connection with his Default Judgment and a sheriff sale was scheduled for September 9-10, 2020 (the "Sheriff Sale"). MTD Ex. B. The Debtor responded by filing the instant bankruptcy case on August 27, 2020, thereby staying the

---

[4] According to the record, the Debtor withdrew $20,000 in cash on February 3, 2020 and spent $5,176 on home repair, $7,500 on a truck, $1,000 on decorative accessories, $3,000 on vacations, and $1,500 on living expenses. MTD ¶¶ 33–35, 39–42, 58. The next day, on February 4, 2020, she withdrew an additional $5,000 to purchase a queen leather sleeper sofa for $1,500, various tools for $1,000, and to pay bills totaling $2,500. *Id.* She later withdrew another $3,000 on February 12, 2020 that is unaccounted for. *Id.*

Sheriff Sale pending further order of this Court. ECF No. 1. On September 2, 2020, the Debtor filed her First Amended Plan. ECF No. 13. Reynolds filed his Objection to the First Amended Plan on October 26, 2020 and his Motion to Dismiss this Case with Prejudice on May 10, 2020. The Debtor filed her Response on June 1, 2021. A hearing on the Motion to Dismiss and the Objection to Confirmation was held on June 9, 2021 where testimony was taken, and evidence placed into the record. Following the hearing, the Court took the Motion to Dismiss and the Objection to Confirmation under advisement. The matters are now ripe for decision.

### III. Discussion

The parties agree that the standard for a lack of good faith plan objection and case dismissal is governed by the Third Circuit's holding in *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007).[5] *Hackerman v. Demeza,* 576 B.R. 472, 479 (M.D. Pa. 2017) (holding that when determining whether a Chapter 13 plan was proposed in good faith, bankruptcy courts in this Circuit apply the same analysis used for determining whether a Chapter 13 bankruptcy petition was filed in good faith). Whether a debtor has filed a bankruptcy petition in bad faith is fact-sensitive and is determined on a case-by-case basis considering the totality of the circumstances. *In re Myers*, 491 F.3d at 125. In *Myers*, the Third Circuit held that the following non-exhaustive list of factors are to be assessed when determining whether a petition has been filed in good faith: (1) the nature of the debt; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Id.* (citing *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)).

---

[5] See also *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996).
5

A bankruptcy court's discretion in making a good-faith determination, however, is not without limitations. *Perlin v. Hitachi Capital Am. Corp.* (*In re Perlin*), 497 F.3d 364, 373 (3d Cir. 2007). In *Perlin*, the Third Circuit noted that "bankruptcy and district courts have reserved bad-faith dismissal for the truly egregious case, often involving individuals with substantial means who have flaunted their wealth, have continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties." *Id.* (quoting *Tamecki v. Frank* (*In re Tamecki*), 229 F.3d 205, 209 (3d Cir. 2000) (Rendell, J., dissenting)).

In support of his Objection and Motion to Dismiss, Reynolds has offered a theory of the case along with some evidence of conduct by the Debtor that is troubling. Specifically, Reynolds theorizes that the Debtor participated in a scheme to abuse the bankruptcy process by: (1) dismissing her 2019 Bankruptcy; (2) settling the Malpractice Action and obtaining the Net Settlement Proceeds after dismissal; (3) spending the Net Settlement Proceeds without offering any portion of it to her creditors, including Reynolds; (4) initiating this bankruptcy proceeding to thwart the collection efforts of Reynolds; and (5) concealing settlement of the Malpractice Action and receipt of the Net Settlement Proceeds from the Court in this proceeding. MTD ¶¶ 27, 33, 62-63, 65; MTD Hr'g. Tr. 11:18-20. Reynolds alleges that the Debtor concocted the above scheme and timed her actions precisely to avoid distribution of the Net Settlement Proceeds to her creditors through the 2019 Bankruptcy and to harm Reynolds by frustrating his collection activities. MTD Hr'g. Tr. 10:6-9.

In support of his theory, and as evidence of the Debtor's bad faith scheme, Reynolds points to the Debtor's initial failure to disclose numerous items on her schedules in this matter. Those items include: (1) that she was party to the Malpractice Action within 1 year of filing this

case; (2) that she collected $75,000 as settlement of the Malpractice Action; (3) that she gave a gift more than $600 to her adult son in the form of a $7,500 truck within 2 years of filing this case; (4) that she made payments on account of debts that benefitted an insider in the form of payment of approximately $12,000 of her adult son's debt, for which she had no legal obligation to pay, within 1 year of filing this case; and (5) that she paid $3,360 to her prior bankruptcy counsel in connection with the 2019 Bankruptcy within 1 year of filing the present case MTD Hr'g. Tr. 14:8-9; MTD ¶¶ 48, 63.

At the Hearing in this matter, Reynolds argued each of the *Lilley* factors in support of his Objection and Motion, but focused extensively on the last two (*e.g.* "the debtor's treatment of creditors both before and after the petition was filed" and "whether the debtor has been forthcoming with the bankruptcy court and the creditors"). MTD Hr'g. Tr. 9:11-26:9; MTD ¶¶ 17-64. The Court will therefore address each of the *Lilley* factors in like manner.

A.  **The Nature of the Debt and How the Debt Arose**

The Court first considers whether the debt resulted from bad acts or intentions of the Debtor. *In re Manfredi*, 434 B.R. 356, 359–60 (Bankr. M.D. Pa. 2010) (citing *e.g.*, *In re Myers*, 491 F.3d at 126) (additional citations omitted). Here, Reynolds argues that the "debt originates from his [C]omplaint" which alleges "unjust enrichment, conversion of personal property, conversion, forgery and endorser liability, replevin, constructive trust with respect to real estate and constructive trust with respect to monies." Aside from this assertion, however, Reynolds offered no testimony or other evidence to suggest the existence of any aggravating factors.

The entry of a default judgment on a complaint alleging actions taken in bad faith – if that is what Reynolds is arguing – is not evidence of bad faith under §§ 1307 and 1325(a)(3) of the Bankruptcy Code because the matter was never actually litigated. The Court's conclusion

7

here is consistent with well-established principles of law. *Fleet Consumer Discount Co. v. Graves (In re Graves),* 33 F.3d 242 (3d Cir. 1994) (applying Pennsylvania law and holding that a default judgment does not have preclusive effect since the case was not actually litigated); see also *McGill v. Southwark Realty Co.*, 828 A.2d 430, 434–35 (Pa. Commw. Ct. 2003). Consideration of this factor does not support a finding of bad faith.

### B. The Timing of the Petition

The Court next considers the timing of the filing of the petition. It is well established that a bankruptcy filing during the pendency of related state court litigation is not necessarily evidence of bad faith. *In re Myers*, 491 F.3d at 125. (citing *In re James Wilson Assocs.,* 965 F.2d 160, 170–71 (7th Cir. 1992)); accord *In re Kerschner*, 246 B.R. 495, 499 (Bankr. M.D. Pa. 2000); *In re Zaver*, 520 B.R. 159, 167 (Bankr. M.D. Pa. 2014). Generally, bad faith exists "'where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose.'" *In re Myers*, 491 F.3d at 125 (quoting *In re Dami,* 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)).

Reynolds' primary allegation as to this factor is captured in his theory that the Debtor timed the filing of this bankruptcy as part of a scheme to hide the Malpractice Action and receipt of the Net Settlement Proceeds from her creditors and the Court, and to avoid distribution of same through the 2019 Bankruptcy. Thus, Reynolds alleges that this case is without a legitimate reorganization purpose and was timed to follow: (1) dismissal of her 2019 Bankruptcy; (2) settlement of the Malpractice Action; (3) receipt of the Net Settlement Proceeds; and (4), dissipation of those proceeds without offering any portion of it to Reynolds or other creditors. Reynolds' theory conflicts with the record.

To begin, the Debtor amended her schedules to disclose the Malpractice Claim in the 2019 Bankruptcy. 2019 BK, ECF No. 34. This discredits Reynolds' claim that the Debtor sought to hide the Malpractice Claim from the Court or from her creditors. Following that amendment, and prior to dismissal of the 2019 Bankruptcy, the Debtor and Reynolds engaged in negotiations to satisfy the Default Judgement with proceeds from the Malpractice Action. MTD Hr'g. Tr. 79:2-8. Indeed, the record undeniably demonstrates that Reynolds agreed to forebear from initiating execution proceedings against the Debtor's Residence if she voluntarily dismissed her 2019 Bankruptcy so the Malpractice Action could be settled to generate the funds necessary to settle the Default Judgement. MTD Hr'g. Tr. 56:20-57:8; 79:2-81:8; 94:16-95:5; *See also* Debtor's Exhibit No. 1. These facts negate Reynolds' claim that the Debtor sought to hide the Malpractice Claim from her creditors. After settling the Malpractice Action, the Debtor offered Reynolds the Net Settlement Proceeds as full accord and satisfaction of the Default Judgment. MTD Hr'g. Tr. 29:3-8; 58:15-16; 81:5-8. Reynolds, however, rejected that offer. *Id*. This refutes Reynolds' assertion that the Debtor sought to dissipate the Net Settlement Proceeds without offering any portion of it to Reynolds or other creditors. Next, Reynolds reinitiated execution proceedings against the Debtor's Residence. MTD Ex. B, ECF No. 46-2. Unable to achieve settlement and fearing the loss of her property through sheriff sale, the Debtor responded by filing the instant bankruptcy case to stay those proceedings.[6] This fact, together with the Debtor's post-petition efforts to restructure her personal finances and to propose a confirmable plan to save her property from seizure and sale, contradicts Reynolds' theory that this case was filed to defeat state court litigation without a legitimate reorganization purpose.

---

[6] The Debtor's uncontested testimony reveals that she filed the bankruptcy to stay the Sheriff Sale to keep her furniture from being sold, a protection afforded by the Bankruptcy Code. MTD Hr'g. Tr. 91:1-12.

Collectively, the foregoing facts entirely refute Reynolds' theory that the Debtor timed the filing of this bankruptcy proceeding as part of a scheme to hide the Malpractice Action and receipt of the Net Settlement Proceeds from her creditors and the Court, and to avoid distribution of same through the 2019 Bankruptcy. Therefore, this factor does not support a finding of bad faith.

C.     **The Debtor's Motive in Filing the Petition**

Regarding motive, it is not bad faith to avail oneself of a particular protection in the Code – such as the automatic stay – because Congress enacted such protections with the expectation that they would be used. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127 (3d Cir. 2004) (citing *In re James Wilson Assocs.,* 965 F.2d 160 at 170 (noting that "[i]t is not bad faith to seek to gain an advantage from declaring bankruptcy–why else would one declare it?"); *In re PPL Enters*, 228 B.R. 339 (Bank. D. Del. 1998) (stating that "it is not 'bad faith' for debtors to file for bankruptcy in order to take advantage of a particular provision of the Code"). However, bad faith has been found in cases where the purpose of the bankruptcy filing is solely to "thwart a creditor claim rather than making an honest effort to pay debts[.]" *In re Cartwright*, No. 1-13-BK-03952-MDF, 2014 WL 2574502, at *5 (citing *In re Fleury*, 294 B.R. 1, 8 (Bankr. D. Mass. 2003)).

Reynolds' primary allegation as to this factor is again encapsulated in his theory that the Debtor filed this bankruptcy proceeding as part of a scheme. Specifically, Reynolds claims that the "Debtor dismissed her 2019 Chapter 13, received significant settlement proceeds, depleted those funds in a matter of weeks, and then refiled the present case to again thwart [Reynold]'s retrieval of his personal property, his contempt proceeding, and execution on his [Default] Judgment." MTD ¶ 27. As discussed at greater length in the preceding section, however, the

record here entirely belies Reynolds' theory. To summarize, the Court finds that Debtor: (1) disclosed the Malpractice Claim to the Court in her 2019 Bankruptcy; (2) engaged in negotiations with Reynolds to satisfy the Default Judgement with proceeds from the Malpractice Action prior to dismissing the 2019 Bankruptcy; (3) obtained Reynolds' agreement to forebear from initiating execution proceedings against her upon dismissal of her 2019 Bankruptcy while she pursued resolution of the Malpractice Action and settlement with Reynolds; (4) offered Reynolds the Net Settlement Proceeds as full satisfaction of the Default Judgement, which he refused; and (5) filed the instant bankruptcy proceeding only after Reynolds reinitiated execution proceedings against her property and scheduled a sheriff sale for same.

These findings of fact entirely refute Reynolds' theory that the Debtor was motivated to file this bankruptcy case as part of a scheme to thwart Reynolds' claim rather than making an honest effort to pay same. Indeed, the record establishes that the Debtor did make an honest effort to pay as much of Reynolds' claim as she could with the Net Settlement Proceeds. After refusing this offer, Reynolds essentially forfeited his ability to fairly assert that the Debtor did not make an honest effort to pay his claim. Moreover, the record demonstrates that the Debtor filed this case to protect certain personal property and her Residence from sale at the September 9-10, 2020 Sheriff Sale. This is not an improper motive. Therefore, this factor does not support a finding of bad faith.

### D. How the Debtor's Actions Affected Creditors

In a similar vein, Reynolds only minimally pleads facts regarding how the Debtor's actions affected creditors. Typically, the inquiry regarding this factor asks whether the filing is fundamentally fair to creditors and in a manner that complies with the spirit of the Code. *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (citing *In re Schaitz,* 913 F.2d 452, 453 (7th

Cir.1982) ("the most fundamental and encompassing [circumstance] is whether the debtor has dealt fairly with his creditors.")). As to this factor, Reynolds only alleges that the Debtor's actions negatively affected him by staying the pending Sheriff's Sale and any other collection actions. MTD ¶¶ 31-32; MTD Hr'g. Tr. 12:8-13:4. Aside from these references to the normal impact of the automatic stay in most bankruptcy filings, Reynolds offers no evidence to suggest that the Debtor's actions have been fundamentally unfair. Therefore, this factor does not support a finding of a lack of good faith.

### E. The Debtor's Treatment of Creditors Both Pre & Post-Petition

The Court next examines whether the Debtor took actions to frustrate creditors rather than to reorganize and treat creditors fairly. *In re Manfredi*, 434 B.R. at 361. Actions meeting this factor may include the dissipation, concealment, or other transfer of assets for the purpose of placing them beyond the reach of creditors, see *In re Myers*, 491 F.3d at 126; *In re Kerschner*, 246 B.R. at 498–499, or filing multiple bankruptcy petitions for the sole purpose of frustrating a creditor's efforts to exercise its state law remedy. *In re LeGree*, 285 B.R. 615, 619 (Bankr. E.D. Pa. 2002).

Here, and consistent with his general theory of the case, Reynolds argues that the Debtor: (1) dissipated the Net Settlement Proceeds (and unemployment compensation monies) within a short time of receiving it without making any effort to resolve any of her debt;[7] (2) concealed how she spent a significant portion of those funds;[8] (3) attempted to place approximately $20,000 of that sum beyond the reach of her creditors through transfers to or for the benefit of

---

[7] "[A] comparison of the 2019 Chapter 13 and the present Chapter 13 discloses that Debtor made no effort to resolve any of her outstanding debt with the settlement proceeds." MTD ¶ 33; MTD Hr'g. Tr. 13:17-19.
[8] "In addition to the flagrant spending, there is approximately $20,000 unaccounted for in the months preceding the 2020 bankruptcy filing." MTD ¶ 58; MTD Hr'g. Tr. 13:21-24.

12

her adult son;[9] and (4) used multiple bankruptcy filings to accomplish her bad faith scheme. Reynolds also complains that "Debtor's plan proposes to pay nothing to [general] unsecured creditors" and pays only the secured component of his claim ($5,070) while discharging the balance upon completion of the Amended Plan. MTD Hr'g. Tr. 13:17-19. Except for the transfers made by the Debtor to or for the benefit of her adult son, the Court does not find Reynolds' arguments persuasive.

The Third Circuit has "considered and rejected the argument that a chapter 13 plan violates the good faith standard of § 1325(a)(3) merely because it provides for nominal payments to unsecured creditors." *Hackerman v. Demeza*, 576 B.R. 472, n.5 at 479 (quoting *In re Jensen*, 369 B.R. 210, 232 n.56 (Bankr. E.D. Pa. 2007) (citing *In re Hines*, 723 F.2d 333 (3d Cir. 1983)). Accordingly, the distribution to general unsecured creditors proposed by the Amended Plan is not inconsistent with good faith. Moreover, this Court has already considered and rejected Reynolds' contention that the Debtor utilized multiple bankruptcy filings as part of a scheme to hide the Malpractice Action and receipt of the Net Settlement Proceeds from her creditors and the Court, and to avoid distribution of same through the 2019 Bankruptcy.[10] Likewise, the Court has rejected Reynolds' argument that the Debtor dissipated the Net Settlement Proceeds without making any effort to repay her creditors.[11] The Court now also rejects Reynolds' contention that the Debtor has concealed a significant portion of the Net Settlement Proceeds simply because she has not accounted for how they were spent to the satisfaction of Reynolds. It is well established that a Debtor need not account for every penny of spending to satisfy her recordkeeping obligations under the Code. See generally *In re Lindemann*, 375 B.R. 450 (Bankr. N.D. Ill. 2007)

---

[9] The Debtor admits to paying $12,624 of her adult son's expenses and to purchasing a 2002 Chevrolet Avalanche for him at a cost of $7,500 from the Net Settlement Proceeds. Answer to MTD ¶ 63(d) – (e).
[10] See Sec. III.B., *supra*.
[11] See Sec. III.C., *supra*.

13

(see also *In re Manfredi*, 434 B.R. 356, 360 (Bankr. M.D. Pa. 2010) (holding that poor financial management and spending practices are evidence of "bad judgment, not bad faith.") (citing *In re Jensen,* 369 B.R. 210, 234 (Bankr. E.D. Pa. 2007)).

However, the Court shares Reynolds' concern regarding the Debtor's transfer of nearly $20,000 of the Net Settlement Proceeds to or for the benefit of her adult son in the months preceding this bankruptcy case. MTD ¶ 47-49; MTD Hr'g. Tr. 61:2-14, 82:1. However, while the Court agrees that these transactions raise the specter of bad faith, the Court finds that when considered within the context of the totality of the circumstances (including those set forth in the next section of the Opinion) these allegations do not demonstrate the requisite "egregious" circumstances to warrant a dismissal for lack of good faith. *Perlin* 497 F.3d at 375. A more appropriate means of remedying these transfers is to object to confirmation of any plan that does not require the Debtor to pursue recovery of the transfers for the benefit of creditors, or to otherwise commit the value of the transfers for distribution. Thus, this factor on balance does not favor a finding of bad faith.

### F. Whether the Debtor has been Forthcoming with the Court and Creditors

The last factor requires the Court to examine whether the Debtor has been forthcoming with the Bankruptcy Court and creditors. "The integrity of the bankruptcy process rests upon a debtor's full and honest disclosure of all required information." *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007) (citing *e.g., In re Gotham,* 327 B.R. 65, 78 (Bankr. D. Mass. 2005). Accordingly, "to the extent reasonably possible, a debtor seeking the protection of this Court must file bankruptcy schedules which are both thorough and accurate." *Gonyer,* 383 B.R. 316, 322 (citing *In re Bayless,* 78 B.R. 506, 509 (Bankr. S.D. Ohio 1987). This duty continues throughout the duration of the case. *Id*. (citing Fed. R. Bankr. P. 1009). However, "the existence

14

of an inaccuracy in a debtor's schedules will not, standing alone, warrant any adverse action so long as the inaccuracy is inadvertent." *Id.* (citing *In re McVay,* 345 B.R. 846, 849 (Bankr. N.D. Ohio 2006). "The reality is that mistakes do occur." *Id.* Thus, in the absence of evidence showing that the omission of assets or other inaccuracies in a debtor's schedules was more than an honest error or good-faith mistake, such omissions or other inaccuracies do not demonstrate bad faith. *See Kerschner*, 246 B.R. at 499.

In support of this factor, Reynolds charges that the "Debtor, in her Chapter 13 Petition, Schedules, and Statements, has falsified or failed to disclose her assets and income to the Court and her creditors." MTD ¶ 62. Indeed, the Court is troubled by the significant omissions contained within Debtor's schedules as itemized by Reynolds. MTD ¶ 63; MTD Hr'g. Tr. 24:7-26:15. However, the record reflects that those omissions have since been cured and credibly explained as honest error.[12] Answer to MTD ¶¶ 63(a)-(f); MTD Hr'g. Tr. 34:1-6, 35:6-11; Amended SOFA, ECF 53; Amended Schedules, ECF 45. The Debtor's testimony throughout the Hearing was uncontested in this regard and did not demonstrate a scheme on the part of the Debtor to deliberately hide anything from Reynolds or the Court. To the extent that any discrepancies or omissions remain in the Debtor's schedules and statements, the Court detects no ill motive indicative of a scheme to defraud the Court or creditors.[13] Therefore, this factor does not weigh towards a finding of bad faith.

---

[12] The Court does not excuse Debtor's carelessness in preparation of the initial filings with this Court, but the record shows a clear intent to fully disclose her financial condition and to correct any inaccuracies discovered – even if the process may not have been clearly understood by the Debtor at all times. See MTD Hr'g. Tr. 101:24–103:1.
[13] The Court also is mindful that the schedules may have been completed during the significant restrictions imposed by COVID-19, including the inability for attorneys and clients to meet in person. See *id.* at 103:11–104:5.

## IV. Conclusion

In conclusion, the Court is mindful that dismissal of a case based upon lack of good faith should be confined carefully and is generally utilized only in the most egregious cases. Reynolds has not met his burden of proof to succeed with his Motion. Thus, the Motion to Dismiss for lack of good faith is denied and the Objection to Confirmation of the Debtor's First Amended Chapter 13 Plan is overruled as to the assertion of bad faith. The First Amended Plan will be placed on the Chapter 13 Trustee's confirmation calendar on the next available date for further argument, if relevant, consistent with this Opinion.

An appropriate Order will follow.

Dated: December 23, 2021      By the Court,

*Henry W. Van Eck*

Henry W. Van Eck, Chief Bankruptcy Judge (MS)